**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

| | |
|---|---|
| MARGARET KINNALLY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No.: 9:04-cv-2065-PMD |
| v. ) | |
| ) | **ORDER** |
| MARRIOTT INTERNATIONAL, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

In this action, Plaintiff Margaret Kinnally ("Plaintiff" or "Kinnally") alleges violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621. The record includes a Report and Recommendation ("R&R") of a United States Magistrate Judge, which was made in accordance with 28 U.S.C. § 636 (b)(1)(B). The Magistrate recommends that Defendant Marriott International, Inc.'s ("Defendant" or "MI") motion for summary judgment be granted. A party may object, in writing, to a R&R within ten days after being served with a copy of that report. 28 U.S.C. § 636 (b)(1). Plaintiff has filed timely objections to the R&R.

**BACKGROUND**

The facts of this case, as supported by the record and considered in the light most favorable to Plaintiff, are as follows:

Kinnally began working for Marriott Vacation Club International ("MVCI") in 1992. The highest position she held in that organization was Sales Executive. Marriott International ("MI") maintains an internet web site known as MCMS, which serves as an internal posting site listing open positions within the various MI entities for employees of the Marriott entities to review.

-1-

On May 31, 2002, MI posted an opening at the new Marriott resort in the Federation of St. Christopher and Nevis, West Indies ("St. Kitts") for Director of Event Management ("DOEM"). The DOEM position, considered to be a position in senior management, was anticipated to start in July 2002.  On June 4, 2002, Kinnally, who was fifty-one at the time, posted her request of this position to the MCMS system.  John Toti ("Toti"), the MI employee responsible for the hiring decision, interviewed Kinnally for the position by telephone on June 20, 2002.  He told her that he needed someone with her skill set and asked if she would be available to start work immediately. She assured Toti that she could start work as soon as was necessary.  The Magistrate found that a fact finder could conclude that Toti considered her to be qualified for the DOEM job.  (R&R at 5.)

In his affidavit, Toti states that he decided in July of 2002 that it was in the business's best interest to withdraw the DOEM position due to the need to reduce wage costs wherever possible due to low sales forecasts.  He decided to organize the staff and the staff's responsibilities so that he did not need a DOEM until after the hotel opened and sales increased.  Accordingly, in July of 2002, Toti moved his Director of Sales from where he had been working in Miami, Florida, to the resort in St. Kitts where he could cover the DOEM duties for the time being with the help of an Events Manager, a lower level position not considered part of senior management.

Toti told his new Director of Human Resources, Kathy Kaesmacher ("Kaesmacher"), also an employee of MI, to call Kinnally and inform her that she was not selected for the position. Kaesmacher made this call on July 26, 2002.[1]  The contents of the telephone conversation are

---

[1] Kaesmacher also called Constance Bryan, another highly qualified candidate for the job, and told her that she was also rejected from the position.  Bryan deposed that, during this phone call, Kaesmacher told her "that they weren't going to fill the position at that time and that [Bryan] hadn't gotten the job because they weren't filling it at the time and that they would be eventually posting other positions."  (Bryan Depo at 42.)

-2-

disputed. According to Kinnally, Kaesmacher told her that, even though she was qualified for the position, MI had given the DOEM position to "a young local lady who, as they spoke, was already showing customers around the property." (Objections, Doc # 77 at 8.) Kaesmacher remembers that Toti instructed her to make the call, but her only current recollection of the conversation is that she told Kinnally that she had not been selected. (Kaesmacher statement at 48-50.) After a thorough review of the record, it is clear that no one was picked for the DOEM position in July, and no one was selected until May 2003.

In August, 2002, Kinnally noticed that the DOEM position was still posted on MCMS. She contacted Katie Koehler ("Koehler"), a Human Resources Vice President of MI regarding this discrepancy. On August 13, 2002, Koehler contacted Toti and Kaesmacher via email and wrote,

> Is the DOEM job still posted? After speaking to Peg [Kinnally] today (that was fun), she told me the job was still posted in the web and system. If this is the case, we HAVE to get that job closed. Have you selected a candidate? If so, let's finalize; if not, let's figure it out.

In response, Toti wrote a short email on August 14, 2002: "Thanks Katie, we will remove TODAY and have selected a local! Sorry!"[2] The record is unclear as to which "local" Toti is referring. It is possible he is referring to Avernice Jeffers, a Kittian to whom Toti offered a position as Event Manager on September 2, 2002.[3] Regardless of this email exchange between members of MI management, it is clear from the record that no one, local or not, was hired for the DOEM position

---

[2] This series of emails from August of 2002 was produced to Plaintiff on December 2, 2005. As such, they were not a part of the record when the Magistrate Judge wrote the R&R. Accordingly, the court considers this correspondence in addition to the facts as described by the original record and the R&R.

[3] An Event Manager is considered a lower level position, unlike the DOEM position which is a part of senior management. According to the record, Jeffers did not accept the offered Event Manager position.

in the summer or fall of 2002.

Some short time after she was told she would not be selected for the job in 2002, Kinnally suffered an emotional breakdown and has since been totally disabled from severe depression and agoraphobia. Kinnally presents no medical opinion that the failure to get the job caused her to suffer a breakdown. Due to her disability, she could not have performed the DOEM job when it was filled in May 2003 or any other work.

In late August 2002 or early September 2002 Kinnally noticed that the DOEM position had been withdrawn unfilled from the MCMS system.

In May of 2003, three months after the hotel opened and eight months after Kinnally was told that she had not been selected, Toti hired Michael Osbourne to fill the St. Kitts DOEM position. Osbourne was already working at the resort in the food and beverage are as maitre d' and had been handling some of the matters concerning events in addition to his other duties. He was 29 years old at the time he was offered the DOEM position.

## ANALYSIS

### I.   Magistrate Judge's Report

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 269 (1976). The court reviews *de novo* those portions of the R&R to which a specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1)(C).

After a review of the entire record, the R&R, and Plaintiff's objections, the court finds that

the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. The court adopts the Magistrate Judge's R&R as modified and incorporates it by specific reference.

## II.  Legal Standard For Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252. Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

**III.    Age Discrimination in Employment Act ("ADEA")**

As the R&R correctly summarizes, to resist summary judgment on an ADEA claim, a plaintiff may rely on direct evidence of discriminatory intent as in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989), or indirect evidence through burden shifting proof scheme of *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973).  There is no direct evidence of age discrimination here; therefore, the plaintiff must bear the burden of producing evidence of a McDonnell-Douglas prima facie case of age discrimination.  In order to do so, she must show (1) that she is a member of the protected class,[4] (2) that she applied for and was qualified for the position, (3) that she was not selected, and (4) that thereafter the position remained open and the employer continued to seek candidates with comparable qualifications for the position.[5]  *Id.* at 802.

Once the plaintiff establishes a prima facie case, the defendant must respond with evidence that it acted for a legitimate, nondiscriminatory reason.  Then the plaintiff must present evidence that the reason asserted by the defendant is a pretext and not the true reason for the decision to not hire.  Once a plaintiff establishes a prima facie case and produces evidence of pretext, the plaintiff need not submit additional independent evidence of discrimination unless "no rational fact finder could conclude that the action was discriminatory." *Reeves v. Sanderson Plumbing Prods*., 530 U.S. 133, 148 (2000).

## DISCUSSION

In the R&R, the Magistrate recommended that Defendant's motion for summary judgment

---

[4] Individuals who are at least forty years of age are considered part of the protected class for the purposes of the ADEA.  29 U.S.C.A. § 631(a).

[5] If the employer fills the position, the plaintiff must show that the position was filled by one outside the protected class.  *Miles v. Dell, Inc*., 2005 WL 3111917 (4th Cir. 2005).

be granted because Plaintiff failed to present evidence sufficient to establish the fourth prong of the McDonnell-Douglas prima facie age discrimination case. The Magistrate found that, given that MI withdrew the DOEM position in July of 2002, Plaintiff cannot establish that, following her rejection, "the [DOEM] position remained open and the employer continued to seek candidates with comparable qualifications for the position." *McDonnell-Douglas Corp.*, 411 U.S. at 802. Plaintiff makes four objections to this finding.

**1.     Plaintiff objects that the jury *can* reasonably find that the position for which Kinnally applied, DOEM, remained open after she was told her application had been unsuccessful**.

The Magistrate wrote that "[i]t is undisputed that Toti decided to move the senior management team in a different direction, withdrew the [DOEM] position, and stopped considering candidates for the DOEM job until the hotel fully opened almost a year later." (R&R at 10.) Plaintiff argues that it *is* disputed whether the position remained "open" and that therefore summary judgment on this issue was inappropriate.

The court, after considering the record and applicable caselaw, agrees with the Magistrate's conclusion that for a position to be considered to be "open," the employer must continue to seek candidates for the position with comparable qualifications as the plaintiff. *McDonnell-Douglas*, 411 U.S. at 802; *Felix v. Boeing Co.*, 229 F.3d 1157 (9th Cir. 2000) (noting that under *McDonnell Douglas* it is of no consequence whether the employer ultimately filled the position for which the complainant applied; however, the plaintiff needs to demonstrate that she was qualified for at least one of the positions and that after her application was rejected, defendants continued to interview candidates with similar qualifications). The fact that no one was hired for a position is not sufficient alone to show that the position is open as meant by the McDonnell-Douglas Court. *McDonnell-*

*Douglas*, 411 U.S. at 802. In this case, Plaintiff has offered no relevant evidence to show that the St. Kitts hotel continued seeking candidates for the position at any time relevant to this complaint.[6] While Plaintiff claims, and the recently discovered MI management email correspondences confirm, that the DOEM posting remained on the MCMS website for several weeks after Plaintiff's rejection, Plaintiff can offer no evidence that the employer continued accepting applications and interviewing candidates during that time. Also, the correspondence itself confirms that the continuance of the posting was in error. On August 14, Toti clearly wrote that he considered the position to be no longer available.[7] The court is unwilling to let a delay in updating a computer database replace the need for evidence that the employer continued interviewing candidates. As such, the court finds that the Magistrate did not err in finding that the evidence in the record could not lead a rational trier of fact to find that the DOEM position remained open after Plaintiff's application was rejected.

**2.     Plaintiff objects that the employer's evidence that Toti decided not to fill the DOEM position in July, 2002, did not defeat Plaintiff's showing that the position remained open and the employer continued to seek candidates with comparable qualifications for the position (a) because the sole evidence (Toti's affidavit) was in fact disputed, not undisputed; and (b) because the employer's evidence that Toti decided not to fill the position in July is properly analyzed as part of the employer's purported "legitimate neutral reason" for rejecting Plaintiff, rather than part of Plaintiff's prima facie case.**

The court disagrees with both lines of reasoning in this objection. Despite the fact that Plaintiff disputes the truth of the affidavit, Plaintiff offers no evidence to refute Toti's sworn statement that he withdrew the DOEM position in July of 2002. Plaintiff asks the court to consider the August 2002 email correspondence as "impeachment" of Toti's affidavit. This court, however,

---

[6] MI's interviewing and hiring of Osbourne eight months after the rejection of Kinnally is too remote in time for the court to consider relevant.

[7] Regardless of what Toti meant by "we've selected a local," the email makes clear that the position was no longer available and that the continuance of the posting was in error.

can see no reason to do that. The brief, one-line message Toti sent to his superior stating, "we will remove [the MCMS posting] today and have selected a local!", is not inconsistent with his sworn statement that he decided not to fill the DOEM position and instead decided to hire a local Events Manager to work with the Director of Sales to temporarily cover the DOEM responsibilities. Further, not only does the email not impeach the affidavit, it also supports Toti's assertion that the position did not remain open after he rejected Plaintiff. Without some evidence that the employer continued to seek candidates for the position after rejecting the qualified Plaintiff, the fourth prong of the McDonnell-Douglas test necessarily fails.

Plaintiff next claims that the Magistrate erred in considering the withdrawal of the position in determining whether Plaintiff had supported her prima facie case. Plaintiff asserts that the reason for the rejection should be considered only at the second stage of the McDonnell-Douglas test, after the burden has shifted to the Defendant to give a "legitimate neutral reason" for rejecting Plaintiff. The court agrees entirely with this statement. The employer's reason for not hiring Plaintiff is not a part of the McDonnell-Douglas prima facie test. Regardless of the reason for the rejection, however, Plaintiff *is* required to show that the position for which she applied remained open and the employer continued to interview candidates following the rejection. As discussed above, Plaintiff has failed to do this. The Magistrate Judge properly considered MI's withdrawal of the position only to the extent it precluded Plaintiff from proving element four of the prima facie case. Therefore, he did not err in recommending that Defendant's motion for summary judgment be granted.

**3.    Plaintiff objects that the Magistrate erred in finding that the Plaintiff's breakdown, which prevented her from being available for the position at the time it was filled, would prevent her from recovering compensation even if she shows that Defendant's discriminatory actions caused her disability.**

Upon review of the R&R, the court finds that the Magistrate's finding that "when the position was available again, Kinnally was totally disabled," (R&R at 10) is irrelevant to the ultimate recommendation that summary judgment be granted. At no point does the Magistrate assert that such disability would prevent Plaintiff from recovering compensation if she could show that Defendant had committed a discriminatory action that caused her disability. Because this objection is unresponsive to any relevant findings in the R&R, the court need address it no further. *See Orpiano v. Johnson,* 687 F.2d 44, 47 (4th Cir. 1982) (noting that de novo review of objections is "unnecessary in analogous situations when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations."); *Talamantes v. Berkeley County School District,* 340 F.Supp. 2d 684, 689 (D.S.C. 2004) (holding that "[a] general objection which is not sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute is inadequate to obtain district court review").

**4.      Plaintiff asserts that she is excused from having to prove the fourth prong of the McDonnell-Douglas test where the employer's actions are "calculated to disguise its act of discrimination" either by (1) deferring filling the position until Plaintiff was no longer available to apply for the position, and/or by (2) falsely telling Plaintiff that the position had been filled.**

Plaintiff urges the court to adopt the reasoning, as held in *Miles v. Dell, Inc.*, 2005 WL 3111917 (4th Cir. 2005), that "in appropriate cases, a Title VII plaintiff can make out a prima facie case without satisfying prong four" of the McDonnell-Douglas test. In *Miles v. Dell*, the Fourth Circuit explained that the fourth prong generally required that the plaintiff show that "the position remained open or was filled by similarly qualified applicants outside the protected class." *Id.* at *3. The Court then found that, where the position is filled, the plaintiff need not show that the employer hired outside the protected class where (1) the firing and replacement hiring decisions were made

-10-

by different decision-makers, (2) an age discrimination plaintiff is replaced by a much younger person within the same class, (3) a significant lapse of time occurs between the adverse employment action and the decision to hire another person, and (4) the employer's hiring of another person within the protected class is calculated to disguise its act of discrimination. *Id*. at *3-4. While none of these exceptions are directly applicable to the case sub judice, the court will consider Plaintiff's arguments because the McDonnell-Douglas factors are "not necessarily applicable in every respect to differing factual situations." *Id.* at *4.

Plaintiff, making an analogy to the fourth exception listed above, argues that where the employer withdraws a position "in order to disguise its act of discrimination," Plaintiff is excused from proving the fourth prong. *Id.* Plaintiff then suggests that MI intentionally waited until Plaintiff became disabled before filling the position so as to avoid having to offer her the position. It strikes the court as incredible to suggest that an employer terminated an entire position for almost a year, rejecting several candidates, including at least one other highly qualified candidate, all in order to avoid hiring Plaintiff and not, as MI asserts, for financial reasons. The fact that the St. Kitts Marriott functioned effectively throughout its opening and for three months following its opening without a Director of Events Management supports Toti's assertion that the position was considered temporarily unnecessary and was withdrawn due to an unrelated managerial decision to cut wage costs until sales improved. As such, the court gives no weight to Plaintiff's unsupported assertion that the decision to temporarily withdraw the position in 2002 was an elaborate ploy to prevent the court from discovering MI's allegedly discriminatory act.[8]

---

[8] While the court must consider the facts in the light most favorable to Plaintiff, the court is not obliged to give credence to every unsupported theory presented. There must be "evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252.

Plaintiff also argues that prong four need not be satisfied where, as in this case, Defendant deceived Plaintiff regarding the availability of the position. Taking the facts in the record in the light most favorable to Plaintiff, the court must give credence to Plaintiff's assertion that, on July 26, 2002, Human Resources Director Kaesmacher told Plaintiff that the DOEM position had been filled by a young local woman. This falsehood, Plaintiff argues, calculated to discourage Plaintiff from pursuing the position and thus disguise the employer's act of discrimination, excuses Plaintiff from having to prove the fourth prong of her prima facie case. The court does not agree. If Defendant really had given the job to a younger woman, as allegedly described by Kaesmacher on July 26, 2002, Plaintiff would have a successful prima facie case of age discrimination. As such, telling Plaintiff that the position had gone to a "young local woman" *suggests* rather than "disguises" any possible age discrimination. Further, because the record shows that MI did not continue to interview candidates after rejecting Plaintiff, the court finds that Kaesmacher was not, as Plaintiff asserts, discouraging Plaintiff while surreptitiously continuing to interview candidates for the position.[9] Accordingly, because the falsehood could not have been calculated to disguise any possible age discrimination, the court can see no reason for excusing a showing of the fourth prong due to deception. As such, the court finds that Plaintiff is not excused by any of the circumstances of this case from having to present evidence of the fourth prong of the McDonnell-Douglas test.

The record shows that MI management was unclear when informing Plaintiff of their decision to not hire her. During the July phone call, MI could have more clearly explained to Plaintiff the decision to leave the position unfilled and delegate the duties of the position to various

---

[9] Further, the fact that Toti also wrote to his supervisor about having "selected a local" undercuts Plaintiff's theory that Kaesmacher invented the "young local woman" solely to discourage her from pursuing the job.

-12-

senior and lower management employees until such time as the needs of the hotel demanded a separate DOEM. Nonetheless, MI's failure to be clear does not excuse Plaintiff's failure to make a prima facie case of age discrimination. Accordingly, the court finds that the Magistrate Judge did not err in finding that Plaintiff's failure to present evidence of the fourth prong of the prima facie case of age discrimination merits dismissal of this case. As such, the court adopts the Magistrate Judge's recommendation that Defendant's motion for summary judgment be granted and this matter ended.

## CONCLUSION

It is therefore **ORDERED**, for the foregoing reasons, that Defendant's Motion for Summary Judgment is **GRANTED.**

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**January 3, 2006**